IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Michael J. Ferola, #291941, ) | C/A No. 0:03:2918-RBH |
| ) | |
| Plaintiff, ) | |
| ) | **O R D E R** |
| vs. ) | |
| ) | |
| Director, South Carolina Department of Corrections, ) | |
| Mr. Clark, Supervisor, McCormick Correctional ) | |
| Institution (Kitchen), Warden Rushton, MCCI, ) | |
| Marty Burris, Director Food Service, Lt. Bob Anderson, ) | |
| MCCI, Leroy Cartledge, Associate Warden, L. Holems, ) | |
| Grievance Coordinator, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

     The Plaintiff, *pro se*, instituted this action on September 16, 2003 claiming violations of his civil rights pursuant to 42 U.S.C. § 1983 during his confinement at McCormick Correctional Institution. Specifically, the plaintiff alleges denial of access to courts; denial of vocational and education classes and rehabilitative programs; triple celling; double celling in the close custody unit; classification errors; and failure to protect prisoners from harm. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for pretrial handling.

     On October 25, 2004, the defendants filed a motion for summary judgment. On October 29, 2004, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Magistrate Judge issued an order advising the plaintiff of the summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response to the motion for summary judgment on November 5, 2004. The matter is before this Court on the Report and Recommendation of Magistrate Judge Marchant, which

1

was issued on January 28, 2005. After analyzing the issues presented in this case the Magistrate Judge recommended that this Court grant the defendants' motion for summary judgment. The plaintiff filed objections to the Report on February 15, 2005.[1]

The Magistrate Judge makes only a recommendation to the Court, to which any party may file written objections. The Court is not bound by the recommendation of the Magistrate Judge but, instead, retains responsibility for the final determination. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is required to make a *de novo* determination of those portions of the Report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the Report and Recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1).

## Facts

The Court agrees with the factual and procedural background as set forth by the Magistrate Judge in his Report and Recommendation. The Court therefore adopts the Magistrate Judge's version of the facts in this case to the extent such facts are not specifically included herein.

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material

---

[1] Due to a clerical error by the Clerk's Office during the transition to electronic filing, this case did not appear on this Court's list of outstanding motions until recently.

fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369   A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

## Right of Access to Courts

Plaintiff alleges that he was denied sufficient access to the jail law library; that he was not allowed to make free copies of legal cases; and that he was not allowed to mail correspondence to the Southern Prisoner Defense Committee. Plaintiff contends that, due to his insufficient access to the law library and to legal copies, he was not able to file objections to a Report and Recommendation in a civil case and that the case was accordingly dismissed. He also cites a prison regulation which he alleges provides that inmates may send an unlimited amount of mail.

Prisoners are entitled to reasonable access to the courts. *Wolff v. McDonnell*, 418 U.S. 539 (1974). The "fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430

U.S. 817, 828 (1977). This right of access applies only to suits attacking sentences and conditions of confinement and not to litigation of grievances or generally in court, and actual injury must still be shown. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). It is not necessary for the State to provide both law libraries and advisors. *Williams v. Leeke*, 584 F.2d 1336 (4th Cir. 1978).

Although indigent inmates may not be denied reasonable postage for mailing legal mail, they do not have the unlimited right to free postage. "Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations." *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). In the case at bar, the plaintiff has not questioned the adequacy of the law library. He questions the prison policy of requiring payment for copies, even by indigent prisoners.[2] "A denial of free photocopying does not amount to a denial of access to the courts." *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991).

Plaintiff contends that he was not able to file timely objections to a Magistrate Judge's Report in a civil case (*Ferola v. Misle*, case # 0:02-cv-03913) since he was not allowed to use the library on one day during the appropriate time period.[3] According to the plaintiff, the prison policy allowed only eight inmates in the library at the same time. He also contends: "Because plaintiff works in the kitchen he is only allowed access one night a week for (2) hours." (Complaint, pp. 5-6) However, as the Magistrate Judge pointed out, the plaintiff did not request an extension of time within which to file objections to the Report. Such requests are routinely granted if made. In addition, the plaintiff indicates that he was denied access to the library on August 14, 2003 and that this is the reason why he

---

[2] The Affidavit of Warden Collie Rushton indicates that the policy has since been amended to prohibit the purchase of photocopies in the law library, regardless of the individual's ability to pay.

[3] The Report and Recommendation was filed on August 6, 2003. Plaintiff alleges that he received it on August 13, 2003 and that he was refused access to the law library on August 14, 2003.

was not able to file objections to the report in his case. However, the plaintiff has not indicated that he attempted to receive his normally allocated time in the library that week. He simply attached records showing that he did not sign into the library from August 15, 2003 through August 31, 2003. Plaintiff has not made a sufficient showing that he was not allowed use of the library during the time when his objections were due. In addition, the prison policy of not allowing free photocopies of cases and policies is not unconstitutional where prisoners are given access to prison law libraries.

Plaintiff also contends that he should have been provided free postage for mailing of a letter to the Southern Prisoner Defense Committee. However, the prison policy required a showing for the mailing of a letter out-of-state that, either he was a party to an action out-of-state or that the addressee of the letter is an attorney licensed to practice in South Carolina. Unlimited use of the mails by a prisoner to communicate with his attorney is necessary to secure a prisoner's right of access to the courts. *McDonough v. Director of Patuxent*, 429 F.2d 1189 (4th Cir. 1970). However, courts must balance prisoners' rights with economic concerns of states. The constitutional right of access to courts "does not require that prisoners be provided with unlimited free postage." *Dugar v. Coughlin*, 613 F. Supp. 849, 853 (D.N.Y. 1985). The Court finds that the policy of limiting free postage as noted above does not impair the plaintiff's right of access to the courts. Plaintiff has not claimed that he was being legally represented by the Southern Prisoner Defense Committee. Therefore, the plaintiff's claim of denial of access to the courts is denied.

## Deliberate Indifference

The plaintiff contends that on May 5, 2003 he reported kitchen theft by other inmates to the defendants. He further contends that defendant Clark told other inmates on May 7, 2003 that he could no longer give away food to them due to the fact the plaintiff had reported past thefts and was a "snitch"

for the administration. Plaintiff asserts that he complained to defendant Burris, the Food Service Director, about Clark's comment, and Burris signed an affidavit indicating that he instructed Clark not to joke anymore about the plaintiff being his "right-hand man". Plaintiff contends that on May 10, 2003, two unidentified inmates assaulted the plaintiff in a restroom near the kitchen and told him to "keep his mouth shut" about what was going on in the kitchen. Plaintiff then allegedly requested a job change. Plaintiff indicates in his Memorandum in Opposition to Motion for Summary Judgment that "Plaintiff was taken before a job board and removed from the kitchen." The record reflects that the plaintiff did not file a grievance about the matter until July 11, 2003.

Plaintiff also contends that he was threatened by his cellmate and another prisoner who he does not identify by name and that on June 5, 2003 he requested to be moved to another cell. He alleges that this was not done and that on June 8, 2003 (according to the incident report) he was punched in the face and eye by his cellmate. He then states that he requested to be placed in protective custody. According to the Affidavit of Leroy Cartledge, the plaintiff was placed in pre-hearing detention for his protection on or about June 9, 2003.

Deliberate or callous indifference by prison officials to a known risk of harm may be violative of the Eighth Amendment. *Pressly v. Hutto*, 816 F.2d 977 (4th Cir. 1987). Deliberate indifference in the fact of a pervasive risk of harm also states a claim under the Eighth Amendment. *Moore v. Winebrenner*, 927 F.2d 1312, 1315 (4th Cir. 1991); *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985) (inmate must suffer "significant mental distress" and danger must be "totally without penological justification"). Prison officials may not be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 838

(1994). A "serious or significant physical or emotional injury" must be shown. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

Under this standard, the plaintiff has not made a sufficient showing that the defendants knew of and disregarded an excessive risk. *See Chatman v. Anderson*, 2005 WL 2090824 (W.D. Va. 2005). (In certain circumstances, prison officials may be held liable for labeling an inmate a snitch. However, a constitutional violation did not occur where the plaintiff was placed in segregation shortly after the allegations were made.) As noted by the Magistrate Judge, the record in the case at bar reflects that the grievance regarding Clark was actually not filed until July 11, 2003, when the plaintiff was already in protective custody. In addition, the plaintiff has not provided copies of any correspondence which he allegedly sent to the "Director of Corrections" after he was allegedly threatened on May 10, 2003. As to the plaintiff's complaints regarding his request to be moved to another cell, his grievance states that he was not "getting along" with his cellmate and "that it had reach[ed] a point where it would turn violent." However, the plaintiff did not allege specific pending threats to his safety which were communicated to prison officials. Therefore, the plaintiff has not shown deliberate indifference on the part of the defendants.

## **Conditions of Confinement** (**Exercise**)

The Magistrate Judge extensively addressed "Allegation # Three" of the plaintiff's Complaint regarding his allegedly being kept in the Special Management Unit (S.M.U.) for six weeks (in protective custody) without a hearing and found no constitutional violation. In fact, the Magistrate Judge noted that on June 23, 2003, the plaintiff refused to leave the S.M.U. to return to the yard, resulting in his being charged with a disciplinary infraction. The plaintiff, however, states in his objections that

"Plaintiff's Complaint deals only with being denied out of cell exercise, and violation of S.C.D.C. Policy OP-22-23[4], not the placement in S.M.U." (Objections, page 4)

Exercise is an "identifiable human need", deprivation of which may establish an Eighth Amendment claim. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). However, the only allegation regarding exercise by the plaintiff in his verified complaint is buried in the third allegation regarding threats by his roommate and placement in the S.M.U. and simply alleges that he was afforded no "outside exercise" from June 8, 2003 through July 21, 2003, while he was housed in S.M.U. The affidavit of Associate Warden Leroy Cartledge submitted in support of the motion for summary judgment indicates in paragraph 12 thereof that "the Plaintiff was afforded regular exercise while in pre-hearing detention." The affidavit filed by the plaintiff in opposition to the motion for summary judgment does not even mention exercise, and the affidavit of Dansa Chisolm submitted by the plaintiff only refers to "outside exercise".

While denial of "out-of-cell" exercise for an extended period of time may violate the Eighth Amendment under the totality of the circumstances of a prisoner's confinement, *Mitchell v. Rice*, 954 F.2d 187, 192 (4th Cir. 1992), the plaintiff has simply not alleged sufficient facts to survive summary judgment in the case at bar. Additionally, there is no evidence that he was denied "out-of-cell" exercise, and, at best, the Chisolm affidavit refers to "outside exercise". There is no allegation that the plaintiff was denied indoor exercise. He presents no affidavits supporting a denial of "out-of-cell" exercise, rather only an affidavit of denial of "outside exercise". When one party files a motion for summary

---

[4] SCDC OP 22.23 (29) provides that inmates "will be afforded out-of-cell recreation privileges five (5) days per week, a minimum of two (2) hours per day, weather permitting or unless safety and security reasons dictate otherwise."

8

judgment, the non-moving party cannot normally rely on his complaint but must, by factual affidavit or otherwise, respond to the motion. Nevertheless, a verified complaint is considered to be an opposing affidavit for summary judgment purposes when the allegations therein are based upon personal knowledge. *Williams v. Griffin*, 952 F.2d 820 (4th Cir. 1991). Even considering the allegations of the verified complaint, the plaintiff has not met his burden of proof and has only asserted vague and conclusory allegations regarding his lack of exercise. In addition, he does not allege any adverse effect on his health. In order for prison conditions to violate the Eighth Amendment, "a plaintiff must produce evidence of a serious or significant physical or mental injury as a result of the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). The motion for summary judgment on this point is granted.

### General Conditions of Confinement

Plaintiff alleges various additional complaints regarding the conditions of his confinement, including overcrowding; two-man cells in the close custody dorm; and lack of educational programs. However, "only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement". *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). This case is somewhat analogous to *Strickler*, when the Court stated:

> In his efforts to establish a constitutional violation, Strickler alleges deprivations caused by double bunking, limited exercise opportunities, and inadequate ventilation. Though such conditions could rise to the level of constitutional violations were they to produce serious deprivations of identifiable human needs, Strickler has come forward with no evidence that he has sustained any serious or significant physical or emotional injury as a result of these conditions.

*Id.,* 989 F.2d at 1381.

Likewise, in the instant case, the plaintiff has not alleged serious physical or emotional injury as a result of his conditions of confinement. Therefore, the defendants' motion for summary judgment should be granted.

For the reasons stated above, the plaintiff's constitutional claims lack merit. The Court believes that no rational trier of fact could find for the plaintiff. *Matsusita Elec. Insur. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

## Conclusion

After a review of the case law and record before it, the Court adopts the Report and Recommendation of the Magistrate Judge, incorporates it herein, and overrules plaintiff's objections. For the reasons stated therein and in this Order, defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                        s/ R. Bryan Harwell
                                        R. Bryan Harwell
                                        United States District Judge

August 24, 2006